CUNNINGHAM, J., DISSENTING:
I respectfully dissent.
The Appellant begins its appeal with this statement: "This is a case where the Trial Court imposed requirements of supervision on a convicted sex offender as it relates to custody of his own children as a result of his lifetime registration requirements for his sex crimes." Appellant's Brief at 1 (emphasis added).
The joint stipulation-which the majority inexplicably chooses to ignore-States: "The parties agree that besides the placement of [Father] on the sex offender registry and related annual testing there is no *550 evidence to which the parties have knowledge which would result in these proceedings."
Yet, surprisingly, the majority states "these are not the issues before this Court."
It is my grave concern today that the majority has ducked the real issue for which we took this case. In doing so, we have taken the easy route, but left the central question still unanswered: does the listing on the sexual offender registry-for misconduct long past and prior to having children-bar him from having normal custody of his own children?
My answer is a resounding no.
One does not get placed on the dreadful sexual offender registry in a vacuum. There must be a crime or crimes of sexual misconduct precipitating this requirement.
In a convoluting way, the majority has circled back around to decide this case upon the very issue it disclaims. It upholds the trial court's finding of "neglect" and "abuse" which was centered on what? Exclusively-and I must emphasize exclusively -upon the misconduct leading up to and including the listing of Robert on the sexual offender registration.
According to the majority's recount, Robert received felony convictions for sodomy third-degree and sexual abuse. The last misconduct for which he was convicted occurred 12 years ago. He has not been accused, nor convicted of any sexual crimes since that time. He was probated for the crimes he committed. Further, the fact that he was not sent to prison for the commission of these crimes is clear evidence that the courts did not consider him to be a threat.
Robert and Alice married in 2012 and had their first child that year. His two children were not even alive at the time of Robert's misconduct some nine years before.
Upon the recommendation of the Cabinet, Robert willingly submitted himself to a sex-offender risk assessment by Dr. Connor-whose name was taken from the Cabinet's own provider list. Dr. Connor generally gave Robert a clean bill of health and did not find any risk of him reoffending with his own children. Dr. Connor did not deem any further supervision of him necessary.
Yet, the majority supports the trial court's finding that is contrary to all the evidence in this case. All the evidence, that is, except the misconduct from Robert's distant past which precipitated his being on the sexual offender list.
There is one interest that the majority has totally lost sight of in this case. It is the interest of these two children-not born at the time of his past misconduct-to have a normal, healthy relationship with their father. These children are now old enough to know that other children's fathers are not under the same constraints and restrictions as their father. This imprints upon their young minds a negative image of their father as being abnormal or even aberrant in some way. They do not deserve to have the past sins of their father either imposed upon him further, or upon them as his children.
The axiom of not burdening children with the sins of their fathers is ancient. "The son shall not suffer for the iniquity of the father." Ezekiel 28:20.
Since this case began its winding way through the courts, the legislature has weighed in on this very issue. Newly-enacted KRS 17.545(4) is recited in Justice Wright's concurring opinion. Therein, the legislature has reflected the community norms of our Kentucky society. The essence of it says that a past crime of sexual *551 offense against a minor should not interfere with the custody of the offender of his or her own children unless they are the victims of his past crime. The majority opinion chooses to ignore that collective societal sentiment.
Over a decade ago, and before he was married and had the children involved in this case, Robert was convicted. He has served out his probationary period. He has not reoffended. Nevertheless, he must further endure the indignity of being placed upon the sexual offender list and wear the scarlet letter of community scorn and derision. Now, nearly 35, he has paid the price for past wrongs, and is attempting to be a law abiding and productive citizen. His record over the past 12 years is deserving of full recognition of his fatherhood.
The cancerous bane of American society today are dysfunctional families and missing fathers. Our decision today is far from helpful in this regard.
Our advanced notion of rehabilitation holds to the belief that the community and the courts should not stand in the way of the good intention and admirable behavior of an individual seeking to reform and become a better person. The majority joins the trial court in suppressing this noble objective undertaken by the former miscreant in this case. Here is a family of four seeking normalcy in their domestic lives. We have failed them.
I refuse to join the majority and must respectfully dissent. I would affirm the Court of Appeals and remand to the trial court for a full dismissal of the Cabinet's petition.